Kirsten Zittlau (CA Bar No. 220809)
Zittlau Law APC
P.O. Box 161139
San Diego, California 92176
Tel: (619) 252-6888
zittlaulaw@gmail.com

Attorney for Petitioner

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jose TERCERO OLIVERA,<br><br>Petitioner,<br><br>v.<br><br>ACTING WARDEN, Adelanto ICE Processing Center; DAVID J. VENTURELLA, Acting Director, Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS); SIRCE E. OWEN, Director for Executive Office for Immigration Review (EOIR); MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security (DHS); TODD BLANCHE, Acting Attorney General of the United States,<br><br>Respondents. | Case No.: 5:26-cv-5634<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes; Request for Declaratory and Injunctive Relief<br><br>**PETITIONER'S DHS NO.:**<br><br>A 241-961-825 |

Petitioner Jose Tercero Olivera petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241 to remedy Respondents' detaining him unlawfully, and states as follows:

## INTRODUCTION

1. Petitioner, Jose Tercero Olivera (herein, "Mr. Tercero Olivera"), by and through his undersigned counsel, hereby files this petition for writ of habeas corpus and complaint for declaratory and injunctive relief to compel his immediate release from immigration detention, where he has been held by the U.S. Department of Homeland Security (DHS) since being detained on September 11, 2026. Petitioner is in the physical custody of Respondents at the Adelanto Detention Center in Adelanto, California.

2. After crossing the U.S. / Mexico border on September 28, 2022, Mr. Tercero Olivera was detained for two days and released on September 30, 2022 with humanitarian parole under INA § 212(d)(5).

3. Mr. Tercero Olivera was unlawfully detained by ICE at a DUI checkpoint in Los Angeles (even though he tested negative for any alcohol consumption) on September 11, 2026, without first being provided notice of the individualized reasons for the revocation of his humanitarian parole and/or a pre-deprivation hearing.

4. Mr. Tercero Olivera seeks to compel his immediate release from the immigration jail where he has been held by the U.S. Department of Homeland Security (DHS) since being unlawfully detained on September 11, 2026.

5. Absent review in this Court, no other neutral adjudicator will examine Petitioner's plight: Respondents will continue to detain him in violation of the law essentially indefinitely. Petitioner thus urges this Court to review the lawfulness of his detention; declare that his detention is unlawful; and order his immediate release.

6. Mr. Tercero Olivera must be released from custody because the arbitrary and capricious detention of Petitioner without being provided with any individualized reasons/change in circumstances that would justify the revocation of Petitioner's humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A) constitutes an unlawful agency action in violation of the Administrative Procedure Act ("APA").

7. Moreover, the Due Process clause of the Fifth Amendment, as well as statutory and regulatory authorities, require the government to provide noncitizens with a pre-deprivation hearing, or, at a minimum, notice of the individualized reasons for the revocation of humanitarian parole.

## JURISDICTION

8. Jurisdiction is proper, and relief is available pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (original jurisdiction), 5 U.S.C. § 702 (waiver of sovereign immunity), 28 U.S.C. § 2241 (habeas corpus jurisdiction), and Article I, Section 9, clause 2 of the United States Constitution (the Suspension Clause).

9. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

10. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493- 500 (1973), venue lies in the United States District Court for the Central District of California, the judicial district in which Petitioner is currently detained.

11. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

## PARTIES

12. Petitioner Jose TERCERO OLIVERA is a Nicaraguan national who most recently entered the United States in September of 2022 without inspection. He was arrested by immigration agents upon entering, detained for two days, and then released with parole under INA 212(d)(5). ICE agents illegally re-detained him on September 11, 2026, in Los Angeles, California at a DUI checkpoint (despite testing negative for alcohol). Petitioner has been in immigration detention since that date.

13. Respondent David J. VENTURELLA is the Acting Director of Immigration and Customs Enforcement (ICE) and is named in his official capacity. ICE is the component of the DHS that is responsible for detaining and removing noncitizens according to immigration law and oversees custody determinations. Among other things, ICE is responsible for the administration and enforcement of the immigration laws,

including the removal of noncitizens. In his official capacity as head of ICE, he is the legal custodian of Petitioner.

14. Respondent Sirce E. OWEN is the Director of the Executive Office for Immigration Review (EOIR) and has ultimate responsibility for overseeing the operation of the immigration courts and the Board of Immigration Appeals (BIA), including bond hearings. EOIR is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings. He is sued in his official capacity.

15. Respondent Markwayne MULLIN is the Secretary of the Department of Homeland Security (DHS) and is named in his official capacity. DHS is the federal agency encompassing ICE, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of noncitizens. In his capacity as Secretary, Respondent Mullin has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to §402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002); *see also* 8 U.S.C. § 1103(a). Respondent Mullin is the ultimate legal custodian of Petitioner.

16. Respondent Todd BLANCHE is the Attorney General of the United States and the most senior official in the U.S. Department of Justice (DOJ) and is named in his official capacity. He has the authority to interpret the immigration laws and adjudicate removal cases. The Attorney General delegates this responsibility to the Executive Office

for Immigration Review (EOIR), which administers the immigration courts and the BIA. He is sued in his official capacity.

17. Respondent Acting Warden is the Warden of the Adelanto Detention Center, where Petitioner is being held. Respondent Acting Warden oversees the day-to-day operations of the Adelanto Detention Center and acts at the Direction of Respondents Venturella and Mullin. Respondent Acting Warden is a custodian of Petitioner and is named in their official capacity.

## FACTS

18. Mr. Tercero Olivera is a 25-year-old man from Nicaragua. He fled Nicaragua to seek asylum in the U.S. in September of 2022.

19. Mr. Tercero Olivera entered the U.S. without inspection on September 28, 2022. He was apprehended by U.S. border officials, detained and released shortly thereafter on September 30, 2022, pursuant to INA § 212(d)(5). See **Exhibit 1**.

20. Fifteen days after entering the U.S., Mr. Tercero Olivera went to ICE to check-in per the instructions he was given with his humanitarian parole. ICE did not provide him with any documentation, including but not limited to a Notice to Appear, at that time or on any later date.

21. Being only 21 years old when he entered the U.S., Mr. Tercero Olivera believed that he should continue to wait for a court date and that would be when he would submit his application for asylum, but he never received notice of any court date.

22. On September 10, 2026, Mr. Tercero Olivera was going to a church gathering when he was stopped at a DUI checkpoint at Broadway and Slauson in Los Angeles, California. After testing negative for any alcohol consumption more than once, Mr. Tercero Olivera was finally released the next day only to be arrested by ICE.

23. At the time of his arrest by ICE on September 11, 2026, he was not provided any reason for the revocation of his parole, including written notice of the reasons his parole was being revoked. Mr. Tercero Olivera was also not provided with any pre-deprivation hearing or other due process.

24. Mr. Tercero Olivera has complied with all laws of the U.S. and requirements by ICE. Mr. Tercero Olivera has developed ties in his community and has no criminal history. Since being paroled into the U.S. four years ago, Mr. Tercero Olivera has developed a strong due process liberty interest, as further discussed below.

## EXHAUSTION

25. In habeas claims, exhaustion of administrative remedies is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Id. (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted)).

26. Here, exhaustion should be excused because the available administrative process is futile and inadequate to remedy Petitioner's pre-deprivation due process claim and because his continued detention causes irreparable harm.

27. Petitioner's claim challenges Respondents' failure to provide constitutionally adequate process before revoking his previously granted liberty. Although an administrative custody proceeding may address whether Petitioner should remain detained going forward, it cannot retroactively provide the process required before his re-detention or remedy the deprivation that had already occurred.

28. Furthermore, ICE takes the position under this Administration that noncitizens like the Petitioner are subject to mandatory detention and as such, any request for release to ICE is futile. In addition, immigration judges do not take jurisdiction over redetermining the custody of noncitizens like Petitioner pursuant to the Board of Immigration Appeals decision in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025).

29. Moreover, statutory exhaustion requirements do not apply to Petitioner's claim of unlawful custody in violation of his due process rights, and there are no administrative remedies that he needs to exhaust. *See Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1058 (9th Cir. 1995) (finding exhaustion to be a "futile exercise because the agency does not have jurisdiction to review" constitutional claims); *In re Indefinite Det. Cases*, 82 F. Supp. 2d 1098, 1099 (C.D. Cal. 2000) (same).

30. Finally, every day that Petitioner remains wrongfully detained causes him harm that cannot be repaired. His continued detention puts his physical and mental health

at greater risk, further warranting a finding of irreparable harm and the waiver of the prudential exhaustion requirement. *See De Paz Sales v. Barr*, No. 19-CV-07221-KAW, 2020 WL 353465, at *4 (N.D. Cal. Jan. 21, 2020) (noting that the petitioner "continues to suffer significant psychological effects from his detention, including anxiety caused by the threats of other inmates and two suicide attempts," in finding that petitioner would suffer irreparable harm warranting waiver of exhaustion requirement).

## LEGAL FRAMEWORK

### Statutory and Regulatory Framework – Humanitarian Parole

31. The INA provides that DHS "may . . . in [the Secretary's] discretion parole" an arriving asylum seeker into the United States on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

32. If the Department exercises the option of paroling the noncitizen into the U.S. under 8 U.S.C. § 1182(d)(5), said parole may not be terminated arbitrarily but rather "upon accomplishment of the purpose for which parole was authorized or when…neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States…." 8 C.F.R. § 212.5(e)(2)(i).

33. Release on parole is an "express exception" to detention and is a "specific provision authorizing release." *Jennings v. Rodriguez*, 583 U.S. 231, 300 (2018). The plain language of the statute establishes that parole must be both granted and revoked on an individual, case-by-case basis: 8 U.S.C. § 1182(d)(5)(A) directs that parole may be granted "only on a case-by-case basis" and may be terminated "when the purposes of

such parole shall . . . have been served." See also *Doe v. Noem*, 2025 WL 1505688, at *1 (1st Cir. May 5, 2025) (observing that "[c]ommon sense suggests . . . that parole given only on a case-by-case basis is to be terminated only on such a basis" and pointing to individualized statutory language of § 1182(d)(5)).

**<u>The Administrative Procedure Act</u>**

34. Under the Administrative Procedure Act ("APA"), an agency must act in a manner that is not arbitrary or capricious. See 5 U.S.C. § 706(2)(A) (directing courts to "hold unlawful and set aside agency action" that is arbitrary and capricious); *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (requiring an agency to articulate a "satisfactory explanation" for its action, "including a rational connection between the facts found and the choice made").

**<u>Due Process</u>**

35. The government cannot deprive any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. Due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

36. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

37. Parolees in particular have a weighty liberty interest under the Due Process Clause. The Supreme Court has noted that, "subject to the conditions of his parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

38. The parolee relies "on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The Court explained that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others." *Id.* In turn, "[b]y whatever name, the liberty is valuable and must be seen within the protection of the [Fifth] Amendment." *Morrissey*, 408 U.S. at 482.

39. "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Even where "a decision-making process involves discretion," it "does not prevent an individual from having a protectable liberty interest." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970; *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022).

40. The protected liberty interest is even more substantial when balancing the nonpunitive purpose of immigration detention against the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families

as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

41. "Adequate, or due, process depends upon the nature of the interest affected. The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the [government] must provide to satisfy due process." *Haygood v. Younger*, 769 F.2d 1350, 1355-56 (9th Cir. 1985) (en banc) (citing *Morrissey*, 408 U.S. at 481-82). This Court must "balance [Petitioner's] liberty interest against the [government's] interest in the efficient administration of" its immigration laws in order to determine what process he is owed to ensure that ICE does not unconstitutionally deprive him of his liberty. *Id*. at 1357.

42. The three-factor *Mathews* test (adopted by the Court of Appeals for the Ninth Circuit, *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022)), helps the Court assess adequate safeguards: "[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

43. The Due Process Clause typically requires a hearing of some sort before the government may deprive a person of liberty. *Zinermon v. Burch*, 494 U.S. 113, 127

(1990) (*see also United States v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014) ("Due process always requires, at a minimum, notice and an opportunity to respond."). Post-deprivation remedies may satisfy the requirements of due process only in a "special case" where they are "the only remedies the State could be expected to provide" and where "one of the variables in the *Mathews* equation—the value of post deprivation safeguards—is negligible in preventing the kind of deprivation at issue" such that "the State cannot be required constitutionally to do the impossible by providing post deprivation process." *Zinermon*, 494 U.S. at 985.

44. An individual's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

45. Even if the Government believes "it has a valid reason" to detain noncitizens, it "does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Guillermo M.R. v. Kaiser*, ––– F. Supp. 3d ––––, ––––, No. 25-cv-05436-RFL, 2025 WL 1983677, at *7 (N.D. Cal. July 17, 2025); *see also Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025).

46. Where the petitioner "has not received any bond or custody … hearing, the risk of an erroneous deprivation [of liberty] is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her

detention." *Pinchi v. Noem*, —— F. Supp. 3d ——, ——, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *8 (N.D. Cal. July 24, 2025) (citation omitted).

47. A pre-detention hearing significantly decreases that risk because the government has to prove to a neutral adjudicator by clear and convincing evidence that circumstances have materially changed to justify re-detention, and a hearing is likelier to produce accurate determinations regarding factual disputes, such as whether a certain occurrence constitutes a "changed circumstance." *See Chalkboard, Inc. v. Brandt*, 902 F.2d 1375, 1381 (9th Cir. 1989) (when "delicate judgments depending on credibility of witnesses and assessment of conditions not subject to measurement" are at issue, the "risk of error is considerable when just determinations are made after hearing only one side").

48. Further, the risk of an erroneous deprivation of liberty under *Mathews* can be decreased where a neutral decisionmaker, rather than ICE alone, makes custody determinations. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1091-92 (9th Cir. 2011); *see also Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006) ("A neutral judge is one of the most basic due process protections.")

49. Finally, immigration detention is civil (as opposed to criminal), and its primary purpose is to ensure a noncitizen's appearance during removal proceedings and protect against danger to the community; it cannot be punitive. *Zadvydas v. Davis*, 533 U.S. 678, 690, 697 (2001).

## FIRST CLAIM FOR RELIEF

### Mr. Tercero Olivera's Detention Violates His Fifth Amendment Right to Due Process

50. The Petitioner hereby incorporates by reference the allegations of fact set forth in the preceding paragraphs.

51. Mr. Tercero Olivera's continued detention without any pre-deprivation hearing violates his right to due process under the Fifth Amendment.

52. The Government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

53. Mr. Tercero Olivera has a vested liberty interest by virtue of having been paroled into the United States and having resided within the U.S. for four years. Due Process does not permit the government to strip him of that liberty without a hearing before this Court. *See Morrissey v. Brewer*, 408 U.S. 471, 487-88 (1972).

54. Mr. Tercero Olivera's arrest without a hearing violated the Constitution both substantively, because Respondents have no valid interest in detaining him since circumstances have not changed since he was paroled into the United States, and procedurally, because he was not provided with a pre-detention hearing.

55. Mr. Tercero Olivera has demonstrated compliance with the laws of the United States generally over the past four years and has built community within the United States.

56. Mr. Tercero Olivera's continued detention without a tenable justification violates his Fifth Amendment right to due process.

**SECOND CLAIM FOR RELIEF**

**Mr. Tercero Olivera's Detention Violates the Administrative Procedure Act, 5 U.S.C. § 706(2)**

57. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

58. Under the Administrative Procedure Act, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," that is "contrary to constitutional right [or] power," or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

59. An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

60. In *Y-Z-H-L v Bostock*, 2025 WL 1898025, at *10-12 (D. Or. July 9, 2025), the court explained the parole process in immigration cases and noted that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons therefore. Under the APA, immigration parolees are entitled to determinations related to their parole revocations that are not arbitrary, capricious, or an abuse of discretion. *Id.* at *10.

61. By categorically revoking Mr. Tercero Olivera's parole without any individualized and/or written description of the reasons therefore and subsequently detaining the Petitioner without consideration of his individualized facts and circumstances, Respondents have violated the APA.

62. Moreover, Respondents also acted arbitrarily and capriciously in detaining Mr. Tercero Olivera.

63. Respondents have made no finding that Mr. Tercero Olivera, an individual with no criminal history, is a danger to the community. Nor have Respondents made any finding that Mr. Tercero Olivera is a flight risk.

64. By detaining Mr. Tercero Olivera categorically, Respondents have abused their discretion because there have been no changes to the facts or circumstances since the agency made its initial determination to parole him into the United States which support detention.

65. As such, the Petitioner's parole revocation and detention was arbitrary and capricious in violation of the APA, the agency's actions must be set aside, and Mr. Tercero Olivera must be released from detention.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner Mr. Tercero Olivera respectfully asks that this Court take jurisdiction over this matter and grant the following relief:

(1) Enjoin Respondents from transferring Petitioner outside the jurisdiction of the Central District of California pending the resolution of this case;

(2) Issue a Writ of Habeas Corpus requiring Respondents to immediately release Mr. Tercero Olivera (and all his possessions and identification documents) and restore him to his status quo prior to the unlawful detention;

(3) Award Mr. Tercero Olivera attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

(4) Grant any other and further relief that this Court deems just and proper.

Dated: September 24, 2026 Respectfully submitted,

*/s/ Kirsten Zittlau*
Kirsten Zittlau
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. 2242**

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition and reviewed his file. Based upon this, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on this, September 24, 2026, in San Diego, California.

*/s/ Kirsten Zittlau*
Kirsten Zittlau
Attorney for Petitioner